IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

**OWNERS INSURANCE COMPANY,**   }
                                }
    **Plaintiff,**             }
                                }
**v.**                          }   **Case No.: 2:05-CV-0474-RDP**
                                }
**MG SQUARED, INC.,**           }
                                }
    **Defendant.**             }

### MEMORANDUM OPINION

      The court has before it Plaintiff Owners Insurance Company's Motion for Summary Judgment (Doc. # 11) filed November 9, 2005, and Defendant MG Squared, Inc.'s Cross-Motion for Summary Judgment (Doc. # 13) filed November 30, 2005. The motions have been fully briefed and were under submission as of January 3, 2006. (Doc. # 9).

      This is a declaratory judgment action brought by Plaintiff Owners Insurance Company ("Owners") to adjudicate the rights of the parties under a policy of Commercial General Liability Coverage (the "Policy") issued by Owners to MG Squared, Inc. ("MG²") for the period March 20, 2004 until March 20, 2005. (Doc. # 1, Ex. A). MG² seeks coverage under the Policy for any liability it may incur in a lawsuit pending concurrently in this court. *Jones Bros., Inc. v. Louana Construction Co., Inc., et al.*, Case No. 2:04-CV-02246-VEH (hereinafter the "underlying action"). Owners is providing a defense to MG² in the underlying action under a full reservation of rights, but it seeks a declaration from this court that it has neither a duty to defend nor a duty to indemnify MG² in the underlying action.

      For the reasons outlined below, the court finds that Plaintiff's motion for summary judgment is due to be granted while Defendant's motion for summary judgment is due to be denied.

I.	**Legal Standards for Evaluating a Summary Judgment Motion**

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *See Id.* at 323. Once the moving party has met his burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* 249.

II.     **Relevant Undisputed Facts**[1]

    A.     **The Underlying Action**

The Alabama Department of Transportation ("ALDOT") awarded a contract to Jones Bros. ("Jones") as the low bidder to perform work on the I-459 Galleria Fly-Over (the "Project"). Jones' low bid included a subcontract bid from Louana Construction Company ("Louana") to install lights, light poles and lowering devices that allow highway lights to be lowered for maintenance on the Project. Louana's subcontract bid to Jones included a bid from vendor MG² to provide the lights, light poles and lowering devices that Louana would install.

Louana assembled and installed at the Project the light poles and dual lowering devices provided by MG². While the dual lowering devices initially worked after installation, a few weeks later they did not function properly. According to Louana, when it attempted to lower the devices, they became stuck at a height at which maintenance could not be safely performed, the pole top tenons began to stress, warp and bend, and bolts securing the dual lowering devices began to tear through the metal of the light poles. Louana claims that design and/or manufacturing defects were the cause of the problem with the light poles and lowering devices, and that it notified MG² of the problem, but MG² would not provide assistance. According to MG², the dual lowering devices did not function properly because they had been improperly installed by Louana. Louana disassembled and reassembled the devices to ensure that they were properly installed, but they continued to perform improperly.

---

[1] If facts are in dispute, they are stated in the manner most favorable to the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). The facts are taken from the third-party complaint filed by Louana Construction Company against MG² in the underlying action (Doc. # 11, Ex. A), and the Policy, which was attached to both the complaint in this case and Owners' motion for summary judgment. (Doc. #1; Doc. # 11, Ex. C).

ALDOT subsequently demanded that the devices be removed and replaced. When Louana would not remove and replace the light poles and dual lowering devices at its own expense, Jones declared Louana in default of its subcontract for the Project. Thereafter, in 2004, Jones filed the underlying action alleging breach of contract against Louana and its surety, Travelers Casualty & Surety Company of America. In turn, Louana filed a third-party complaint against MG² and other third-party defendants. The claims for which a declaration of coverage is sought in this case are those alleged by Louana's third-party complaint in the underlying action - not Jones' claims against Louana.

**B.     Louana's Third-Party Complaint in the Underlying Action**

The amended third-party complaint of Louana accuses MG² of various wrongdoings including breach of contract and warranty; negligence, wantonness, recklessness and willfulness in design, manufacture, fabrication, creation and/or marketing the light poles and dual lowering devices; fraud and suppression; and conspiracy. Louana also seeks indemnity and/or contribution from MG². (Doc. # 11, Ex. A at ¶ 28). Numerous paragraphs in Louana's complaint discuss, in part, Louana's claim that MG² and the other third-party defendants in the underlying action negligently or recklessly designed, manufactured and/or fabricated the lowering devices at issue in this case. (Doc. # 11, Ex. A at ¶¶ 18, 19, 20, 21, 22, 24, 32). In its complaint, Louana alleges that MG² engaged in "wrongful actions." (Doc. # 11, Ex. A at ¶¶ 24, 25, 28, 30, 32, 36, 39). Louana also alleges that MG²'s "wrongful actions" caused injury to "its good name and business reputation." (Doc. # 11, Ex. A at ¶ 25).

On May 26, 2005, less than two months after MG² answered Plaintiff's complaint in this case, the court in the underlying action stayed all discovery in that case pending a ruling on several

dispositive motions.  That stay remains in effect.  *Jones Bros., Inc. v. Louana Construction Co., Inc., et al.*, Case No. 2:04-CV-02246-VEH (Docs. # 109,110).  As a result, the parties in the underlying action have conducted relatively little discovery.

    **C.**    **The Policy**

Relevant portions of the Policy are set forth below:

**SECTION I – COVERAGES**

    **Coverage A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

    1.    **Insuring Agreement**

        a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.

        b.    This insurance applies to "bodily injury" and "property damage" only if:

            (1)    the "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

            (2)    the "bodily injury" or "property damage" occurs during the policy period.

    2.    **Exclusions**

        This does not apply to:

        a.    "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

        b.    "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

      k.      "Property damage" to "your product" arising out of it or any part of it.

      l.      "Property damage" to "your work" arising out of it or any part of it and including in the "products completed operations hazard."

\* \* \*

**Coverage B.  PERSONAL AND ADVERTISING INJURY LIABILITY**

**1.**      **Insuring Agreement**

      a.      We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this coverage part applies. We will have the right and duty to defend any "suit" seeking those damages.

      \* \* \*

      b.      This insurance applies to:

           (1)    "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you . . . .

      \* \* \*

**SECTION V – DEFINITIONS**

3.      "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any one time.

9.      "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

10.     "Personal injury" means, other than "bodily injury," arising out of one or more of the following offenses:

      \* \* \*

      d.      Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services....

11. a. "Products-completed operations hazard" includes all "bodily injury" or "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    (1) Products that are still in your physical possession; or

    (2) Work that has not yet been completed or abandoned.

b. "Your work" will be deemed completed at the earliest of the following times:

    (1) When all of the work called for in your contract has been completed.

    (2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

    (3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

c. This hazard does not include "bodily injury" or "property damage" arising out of:

    (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the "loading or unloading" of it;

    (2) The existence of tools, uninstalled equipment or abandoned or unused materials;

    (3) Products or operations for which the classification in this Coverage Part or in our manual of rules includes products or completed operations.

12. "Property damage" means:

    a. Physical injury to tangible property including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

14. "Your product" means:

    a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        (1) You;

        (2) Others trading under your name; or

        (3) A person or organization whole business or assets you have acquired; and

    b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    "Your product" includes:

    a. Warranties or representations made at any time with respect to the fitness, qualify, durability, performance or use of "your product"; and

    b. The providing of or failure to provide warnings or instructions.

15. "Your work" means:

    a. Work or operations performed by you or on your behalf; and,

    b. Materials, parts or equipment furnished in connection with such work or operations.

    "Your work" includes:

    a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work;" and

    b.  The providing of or failure to provide warnings or instructions.

(Doc. # 11, Ex. C).

### III. Applicable Substantive Law and Discussion

  Owners argues that it has no duty to defend MG² in the underlying action because the allegations in Louana's third-party complaint fall outside the scope of the Policy's coverage. An insurer's duty to defend its insured is determined by the language of the insurance policy and by the allegations in the complaint filed against the insured. *Auto-Owners Ins. Co. v. Toole*, 947 F.Supp. 1557, 1561 (M.D.Ala.1996); *see also Alfa Mutual Ins. Co. v. Morrison*, 613 So.2d 381, 382 (Ala.1993); *Ladner & Co. v. Southern Guar. Ins. Co.*, 347 So.2d 100, 102 (Ala.1977).

  It is well-settled that the duty to defend is more extensive than the duty to indemnify. *Tanner v. State Farm Fire & Cas. Co.*, 874 So. 2d 1058, 1063 (Ala. 2003). "'If the allegations of the injured party's complaint show an accident or occurrence which comes within the coverage of the policy, the insurer is obligated to defend regardless of the ultimate liability of the insured.'" *Toole*, 947 F.Supp. at 1561 (M.D.Ala.1996) (quoting *Chandler v. Alabama Mun. Ins. Co.*, 585 So.2d 1365, 1367 (Ala.1991)) (internal citations omitted). If the complaint against the insured does not, on its face, allege a covered accident or occurrence, a court *may* consider other relevant facts that were not alleged to establish the duty to defend. *Tanner*, 874 So. 2d at 1064. "However, [the Alabama Supreme] Court has never held that, even though the allegations of a complaint do allege a covered accident or occurrence, the courts may consider evidence outside the allegations to disestablish the duty to defend." *Tanner*, 874 So. 2d at 1064.

  Generally, the insured must establish its entitlement to coverage by demonstrating that a claim falls within the policy provisions, while the insurer bears the burden of proving the

applicability of any policy exclusion. *Acceptance Ins. Co. v. Brown*, 832 So. 2d 1, 12 (Ala. 2001). Courts must narrowly construe policy exclusions in order to provide an insured with maximum coverage, *Sphere Drake Ins., P.L.C. v. Shoney's, Inc.*, 923 F. Supp. 1481, 1487 (M.D. Ala. 1996), and the language in an exclusionary provision in a policy of insurance should be given the same meaning "that a person of ordinary intelligence would reasonably give it." *Western World Ins. Co. v. City of Tuscumbia,* 612 So. 2d 1159 (Ala. 1992).

Nevertheless, in Alabama, insurers have the right, absent statutory provisions to the contrary, to limit their liability and write policies with narrow coverage. *Aetna Ins. Co. v. Pete Wilson Roofing & Heating Co.*, 272 So.2d 232, 235 (1972). Thus, although the presence of an ambiguity in an insurance contract requires construction of the policy in a manner most favorable to the insured, *Sphere Drake*, 923 F. Supp. at 1487; *Employers Ins. Co. of Alabama v. Jeff Gin Co.*, 378 So.2d 693, 695 (Ala.1979), where there is no ambiguity in its terms,[2] this court must enforce the contract as written and cannot defeat express provisions in the policy, including exclusions, by making a new contract for the parties. *Chamblee v. State Farm Mut. Auto. Ins. Co.,* 601 So. 2d 922, 924 (Ala. 1992). To arrive at a construction reasonably calculated to accomplish the intent and purpose of the parties, the court cannot construe a sentence in the policy in isolation, but rather must construe it in connection with other provisions of the policy. *Smith v. Kennesaw Life & Accident Ins. Co.*, 221 So.2d 372, 377 (1969).

In this case, the Policy applies to "bodily injury" and "property damage" caused by an "occurrence" that falls during the Policy period (Coverage "A"), as well as "personal injury" or

---

[2] Whether a clause in an insurance policy is ambiguous is a question of law to be decided by the trial court. *First Mercury Syndicate, Inc. v. Franklin County,* 623 So. 2d 1075 (Ala. 1993).

"advertising injury" caused by an offense that falls during the Policy period (Coverage "B"). (Doc. # 11, Ex. C, at 1,4-5).[3] An "occurrence" is defined by the Policy as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Doc. # 11, Ex. C at 13). The Alabama Supreme Court has defined "accident" as "an unexpected happening rather than one occurring through intentional design" or "an event which takes place without one's foresight or expectation or design." *United States Fidelity & Guaranty Co. v. Bonitz Insulation Co.*, 424 So.2d 569, 570 (Ala. 1982).

Counts I, II, III, and V of Louana's third-party complaint in the underlying action allege claims for which the duty to defend is at issue in this case.[4] With the exception of Count I, which seeks indemnity and/or contribution, the remaining counts at issue all claim that Louana was damaged in the following ways: (1) being declared in default of its subcontract with Jones; (2) substantial loss of profits; (3) loss of its general contractor's license; (4) substantial loss of money; (5) mental anguish of Louana principals; and (6) Louana's business reputation and/or good name were disparaged in the construction community. (Doc. # 11, Ex. A). The court will analyze each count in turn.

---

[3] The parties apparently do not dispute that the relevant facts in this case took place during the Policy period.

[4] There is no Count VI in the complaint, and Counts IV, VIII and IX are not alleged against MG². Although Count VII, "Conspiracy," does allege that MG² conspired with the other third-party defendants to select, include, and approve the use of dual lowering devices at the Project (Doc. # 11, Ex. A at ¶ 38, 39), MG² acknowledges that the Policy does not provide coverage for intentional acts, including conspiracy. (Doc. # 14, at 25).

A.  **Counts I and II - Breach of Contract/Indemnity and Breach of Contract/Breach of Warranty**

Count I, "Breach of Contract," seeks indemnity and/or contribution from MG² to the extent that Louana is held liable to Jones for the alleged breach of the Louana/Jones contract. (Doc. # 11, Ex. A at ¶ 28). Count II, "Breach of Contract/Breach of Warranty," alleges that MG² has breached its own implied or actual contractual obligations and warranties owed to Louana. (Doc. # 11, Ex. A at ¶ 30). Owners argues that there is no coverage for the breach of contract claims in Counts I and II because the events giving rise to those claims do not fall within the Policy's coverage definitions.[5] As outlined earlier, the Policy provides that Owners will defend MG² for amounts that MG² is legally obligated to pay for "bodily injury" or "property damage" due to an "occurrence." Owners maintains that, because Counts I and II arise out of a contractual dispute, they are not "occurrences."

The court agrees with Owners that Counts I and II are nothing more than claims arising out of a business dispute. Whether seeking damages from MG² for its alleged breach of the contract with Louana, or seeking indemnity from MG² for Louana's alleged breach of its contract with Jones, the alleged "wrongful act" is the same – breach of a business transaction.[6] It is apparent from a

---

[5] Although Owners initially argued that no coverage exists for any of Louana's claims because they are *all* essentially claims for breach of contract, that argument apparently has been abandoned. (Doc. # 15, at 11). In any event, the court finds that the claims asserted by Louana against MG² constitute more than just breach of contract allegations in disguise. In addition to contractual claims, Louana also alleges, among other things, that MG² defectively designed the lowering devices, causing both property damage and bodily injury (in the form of mental anguish). (Doc. # 11, Ex. A, at ¶¶ 18, 19, 20, 21, 22, 24, 25, 28, 30, 32, 36, 39).

[6] Although MG² attempts to distinguish the "Breach of Contract" claim in Count I - which essentially seeks indemnity for the alleged breach by Louana to Jones – from the "Breach of Contract" claim in Count II - which seeks damages for the alleged breach by MG² to Louana – the court finds no such distinction. Indemnity merely seeks compensation "to make the person whole from a loss already sustained." Appleman, Insurance Laws and Practice, Vol. 4 § 2107; *see also Black's Law Dictionary*, 6th ed. at 769. In this case, Louana seeks indemnity for any losses

reading of the Policy that it was not intended to cover such damages – Section 2.m.(2) of the Policy excludes coverage for "property damage . . . arising out of . . . (2) a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms." (Doc. # 11, Ex. C, at 4).

> To allow coverage here would have the effect of transforming [Owners] into 'a sort of silent business partner' to the [contracts between MG² and Louana, and Louana and Jones] . . . . There is simply no reason to expect that such a liability would be covered under a comprehensive liability policy which has, as its genesis, the purpose of protecting an individual or entity from liability for essentially accidental injury to another individual, or property damage to another's possessions.

*Toole,* 947 F.Supp. at 1564 (internal quotations omitted).[7]  *Accord Ajdarodini v. State Auto Mut. Ins. Co.* 628 So. 2d 312, 313 (Ala. 1993)("[F]rom the plain language of the policy, it is clear that the [plaintiff's] breach of contract claims were not eligible for coverage under the policy."); *Reliance Ins. Co. v. Gary C. Wyatt, Inc.*, 540 So. 2d 688, 691 (Ala. 1988) ("We conclude that no coverage exists for the breach of contract, because the breach did not constitute an 'occurrence' that resulted in bodily injury or property damage under the definitions within the policy, which was necessary to bring such claim within the policy coverage.").  Therefore, the court finds that Owners does not have a duty to defend the breach of contract claims pled in Counts I and II of Louana's complaint.

Although Count II also includes a claim for breach of warranty, the court finds that there is no coverage for warranty claims under the plain language of exclusion (k) of the Policy, which excludes "property damage" to "your product" arising out of it or any part of it. (Doc. # 11, Ex. C, at 4). Because the definition of "property damage" includes "warranties or representations made at

---

sustained in its defense of the breach of contract action brought by Jones in the underlying lawsuit.

[7] Moreover, it appears to the court that MG² concedes that the Policy does not provide coverage for breach of contract claims. (Doc. # 14, at 19).

any time with respect to the fitness, quality, durability, performance or use of "your product" and "the providing of or failure to provide warnings or instructions," claims for breach of warranty are expressly excluded from coverage. (Doc. # 11, Ex. C, at 14, definition 14 (a-b)). Therefore, Owners owes no duty to defend the claim for breach of warranty in Count II of Louana's complaint.

### B. Count III - Negligence, Wantonness, Recklessness, and Willfulness

Count III, "Negligence, Wantonness, Recklessness, and Willfulness," avers that $MG^2$ negligently and recklessly designed, manufactured, fabricated, created and marketed lowering devices that allegedly were defective. (Doc. # 11, Ex. A at ¶ 32). As a threshold matter, the court notes that $MG^2$ acknowledges that the Policy does not provide it with any coverage for intentional acts (Doc. # 14, at 25), which would include wantonness and willfulness. Therefore, it is undisputed that the Policy does not impose on Plaintiff a duty to defend $MG^2$ against, or indemnify $MG^2$ from, those claims. On the other hand, negligence and recklessness constitute something unforeseen or unexpected. By their nature, they are not intentional and therefore not automatically excluded. *See, e.g., Acceptance Ins. Co.*, 832 So. 2d at 15; *Allstate Indemnity Co.*, 985 F. Supp. at 1347 ("Negligence, by definition, is not an intentional tort.").

Owners argues that it does not have a duty to defend Louana's claims for negligent and reckless design, manufacture, fabrication, creation and marketing of the allegedly defective lowering devices (hereinafter, collectively, the "design claims") for several reasons, including the applicability of the "products-completed operations hazard" exclusion (hereinafter the "completed exclusion").[8] As noted earlier, the court must narrowly construe all exclusions in the Policy in order to provide

---

[8] Because the court finds that the completed exclusion does bar coverage for the design claims pled in Count III, there is no need to reach the other arguments advanced by Owners with respect to Count III.

maximum coverage for MG$^2$, and Owners bears the burden of establishing the applicability of any exclusion. *Sphere Drake Ins.*, 923 F. Supp. at 1487. Owners maintains that the completed exclusion prevents coverage for the design claims in Count III because MG$^2$'s work was installed and completed at the time of the alleged damage. The court agrees.

By Endorsement to the Policy, Owners provides no coverage to MG$^2$ for "'bodily injury' or 'property damage' included within the 'products-completed operations hazard.'" (Doc. # 11, Ex. C, at Endorsement). The exclusion includes "all 'bodily injury' and 'property damage' occurring **away from premises you [MG$^2$] own or rent** and arising out of 'your product' or 'your work.'" (Doc. # 11, Ex. C, at 13) (emphasis added). The exclusion goes on to explain that "'Your work' will be deemed completed . . . [w]hen all of the work called for in your contract has been completed." (Doc. # 11, Ex. C, at 13).

MG$^2$ argues that the exclusion does not apply to Count III because the "occurrence" out of which those design claims arose – literally the design, manufacture, creation, fabrication, or marketing of the lowering devices – took place on MG$^2$'s premises. Despite the creativity of MG$^2$'s interpretation, the court finds that even any fair reading of this exclusion does not prevent its application to the design claims. MG$^2$'s argument ignores the plain language of the Policy, which excludes *bodily injury or property damage* occurring away from MG$^2$'s premises. While the catalyst for the damage may have been the negligent design of the lowering devices (which did take place on MG$^2$'s premises), Louana's complaint makes clear that the actual damages claimed by Louana

15

did not occur until after the devices were installed at the Project (which clearly occurred away from MG$^2$'s premises).$^9$

According to the complaint, Louana's work on the Project consisted of "install[ing] lights, light poles, and lowering devices that allow highway lights to be lowered for maintenance." (Doc. # 11, Ex. A, at 4). MG$^2$ contracted with Louana "to provide light poles, and lowering devices on the Project" (Doc. # 11, Ex. A, at 4), although MG$^2$'s bid included light poles and dual lowering devices manufactured by other companies. Louana then "assembled the light poles and dual lowering devices and installed them at the Project." (Doc. # 11, Ex. A, at 6). Louana alleges that although the devices appeared to be in good working order when they were initially tested, several weeks after installation they began to function improperly. (Doc. # 11, Ex. A, at 6). The devices allegedly became stuck and began to stress, warp, and cause damage to the light poles. (Doc. # 11, Ex. A, at 6). Because Louana's complaint alleges that the devices provided by MG$^2$ had already been installed, and even had functioned properly at first before they later failed, there can be no dispute that MG$^2$'s work was completed at the time the devices failed and, therefore, at the time the damage was sustained. The court therefore finds that the design claims alleged by Louana fall squarely within the provisions of the "products-completed operations hazard" exclusion, for which Owners owes no duty to defend.$^{10}$

---

$^9$ Although an argument could be made that any damage to MG$^2$'s property (as opposed to damage to Louana and its property) occurred immediately at the time of the negligent design, it is of no consequence because MG$^2$ admits that exclusion (k) prevents coverage for any damage to MG$^2$'s property. (Docs. # 13, 14).

$^{10}$ The court questions whether exclusion 2(m)(1) also prevents coverage for Count III's design claims. Section 2(m)(1) excludes "Property damage" . . . arising out of: (1) A defect, deficiency, inadequacy, or danger condition in "your product" or "your work. . . ." (Doc. # 11, Ex. C, at 4). However, because Owners has not met its burden to establish the applicability of that

### C. Fraud and Suppression

Count V, "Fraud and Suppression," avers that MG² negligently and recklessly made misrepresentations to Louana, that MG² "should have known" the representations were false, and that MG² suppressed information from Louana. (Doc. # 11, Ex. A at ¶ 36). MG² acknowledges that the Policy does not impose on Owners a duty to defend MG² against, or indemnify MG² from, intentional fraud or intentional suppression. (Doc. # 14, at 25).

However, to the extent that Louana alleges negligent or reckless misrepresentation and suppression, those claims are not necessarily intentional by nature. *See Tanner*, 874 So. 2d at 1065 ("In alleging innocent misrepresentation and reckless misrepresentation, an allegedly injured person alleges an 'occurrence' with damages not 'expected or intended from the standpoint of the insured,' and the insurer owes a duty to defend its insured against such claims." (citation omitted)). Nonetheless, exclusion (k) specifically excludes coverage for any "property damage" to MG²'s product, which is defined to include "warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your product'" or the failure to make such representations. (Doc. # 11, Ex. C, at 4; 14, definition 14 (a-b)). Therefore, for the same reasons outlined above with respect to Count II's warranty claims, all the misrepresentation and suppression claims of Count V are excluded under Exclusion (k) to the Policy.

### D. Damages

Because the court finds that various exclusions prevent coverage for all of the claims alleged in Louana's third-party complaint, it need not reach MG²'s argument that Owners has a duty to

---

exclusion, the court will not address it further. *Universal Underwriters Ins. Co. v. Stokes Chevrolet*, 990 F.2d 598, 605 (11th Cir.1993), *citing United States Fidelity & Guar. Co. v. Armstrong*, 479 So.2d 1164, 1168 (Ala.1985).

defend the specific damages sought by Louana. However, the court adds that, in any event, it is not persuaded by MG²'s damages arguments. As noted earlier, with the exception of Count I, which seeks indemnity and/or contribution, the remaining counts at issue all claim that Louana was damaged in the following ways: (1) being declared in default of its subcontract with Jones; (2) substantial loss of profits; (3) loss of its general contractor's license; (4) substantial loss of money; (5) mental anguish of Louana principals; and (6) Louana's business reputation and/or good name were disparaged in the construction community. (Doc. # 11, Ex. A).

While MG² admits that, pursuant to exclusion (k), the Policy provides no coverage for damage to its own product (defined by MG² as the lowering device which forms a part of the light pole), it points out that Louana's complaint also mentions that the poles, the tenons, and the lights, which were allegedly supplied by other third-party defendants, were also damaged. That argument cuts no ice at all, however, given that *Louana*'s complaint does not seek recovery for property damage to the poles, tenons, and the lights – in fact, by MG²'s own admission, those items were not even Louana's products. Although the other third-party defendants who provided those products may have a claim for property damage against MG² (if MG²'s products caused the damage to their products), that is not Louana's claim in the underlying action at issue here. In fact, the damages alleged by Louana are primarily those which might naturally flow from breach of contract by MG² – being declared in default of its subcontract with Jones, loss of profits, loss of money, loss of its license, damage to its reputation – none of which are contemplated by the Policy as "property damage."

Although MG² also contends that the alleged injury to Louana's "good name and business reputation" constitutes a "personal injury" under the Policy's Coverage "B," Personal and

Advertising Injury Liability, MG$^2$ admits that Louana does not state a slander claim and does not allege that an "oral or written publication" by MG$^2$ caused the alleged injury, as required for Personal and Advertising Injury Liability coverage. (Doc. # 11, Ex. C, "Coverage B"). In fact, the complaint does not even suggest that, outside of the failure of the lowering devices, MG$^2$ independently slandered Louana's good name and business reputation. Rather, Louana claims that its business reputation and good name "were disparaged in the community" – presumably by other persons not even named in the lawsuit – as a result of the alleged failure of MG$^2$'s product. The Policy does not contemplate coverage for that type of damage.

Out of all the claimed damages, the alleged mental anguish suffered by Louana is the only damage for which MG$^2$ might have a valid coverage argument because it arguably falls within the definition of "bodily injury." (Doc. # 11, Ex. C, definition 3). Nonetheless, because the alleged mental anguish does not flow from a covered claim (and therefore did not result from a covered occurrence), Owners is not required to defend or indemnify MG$^2$ for any mental anguish damages recovered by Louana in the underlying action.

**IV.    Conclusion**

As outlined above, the court finds that Owners does not have a duty to defend MG$^2$ against any of Louana's third-party claims in the underlying action. Given the absence of a duty to defend, the court need not reach the question of indemnity. Owners' motion for summary judgment will be granted, MG$^2$'s motion for summary judgment will be denied, and judgment for Plaintiff will be entered. A separate order will be entered.

**DONE** and **ORDERED** this ____19th____ day of January, 2006.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE